IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JAVIER A. MUÑIZ-ALVAREZ (5)

    Defendant.

CRIMINAL NO. 15-739 (PAD)

**MEMORANDUM AND ORDER**

Before the Court is the "Government's Motion Pursuant to 18 U.S.C. § 3145 for a Stay and *De Novo* Review of the Magistrate Judge's Release Order'' (Docket No. 56), which defendant opposed (Docket No. 59). For the reasons explained below, defendant shall be detained without bail pending trial.

### I.    BACKGROUND

On December 2, 2015, Javier Muniz-Alvarez was charged with conspiring to engage in bribery, fraud; and money laundering, and with attempt to obstruct, influence and impede an official investigation by destroying records (Docket No. 3). On December 8, 2015, the government moved for pretrial detention (Docket No. 62). A detention hearing was held before Magistrate Judge Silvia Carreño-Coll, who authorized Muñiz' release on bail with home detention, allowing Muniz to continue or actively seek employment and study, contingent upon the payment of a $10,000.00 bail and standard conditions of release. Id.

The government moved for stay and revocation of the bail order, and requested a *de novo* bail hearing (Docket No. 56), which Muñiz opposed (Docket No. 59). The court granted in part the government's motion, stayed Muñiz' release pending *de novo* review, and scheduled a *de novo* bail hearing (Docket No. 58). On December 9, 2015, the d*e novo* hearing was held. The parties

argued their positions. The government proceeded via proffer, and testimonial and documentary evidence. Muniz cross-examined (Docket No. 65). Based on the information received during the hearing, the court ordered that Muñiz remain under custody pending further review of testimony and evidence.

## II.     STANDARD OF REVIEW

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention of a defendant pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).

Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community. A grand jury indictment on a covered offense is enough to demonstrate probable cause for purposes of triggering the presumption. United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Holland, 922 F.Supp.2d 70, 71 (D.D.C. 2013).

Once triggered, the presumption imposes on the defendant a burden of production. United States v. O'Brien, 895 F.2d 810, 814-815 (1st Cir. 1990). The burden is not heavy. United States v. Stone, 608 F.3d 939, 946 (6th Cir. 2010). It is satisfied introducing at least some evidence contrary to the facts presumed. Id. Rebuttal evidence does not burst or destroy the presumption, which does not disappear, maintaining evidentiary weight. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); O'Brien, 895 F.2d at 814-815. The government retains the burden of

persuasion throughout, in both presumption and non-presumption cases. Stone, 608 F.3d at 946; Bess, 678 F.Supp.929 at 932. Review of a magistrate judge's release order is *de novo*. United States v. Tortora, 922 F.2d 880, 883 n. 4 (1st Cir. 1990). The court must state in writing the reasons for the action taken. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989); O' Brien, 895 F.2d at 813.

### III.   DISCUSSION

The statutory presumption does not apply here. Muñiz is charged in Count 1 (Conspiracy to Commit Federal Programs Fraud and Wire Fraud), Count 18 (Conspiracy to Commit Money Laundering), and Count 23 (Destruction of Records). None of these offenses is listed in 18 U.S.C. §§ 3142(e)(2) and (3), as offenses to which the detention presumption applies.[1]  However, the statute authorizes pretrial detention in cases that involve a serious risk that the defendant will

---

[1] Offenses triggering the presumption include those carrying a maximum term of imprisonment of 10 years or more under the Controlled Substances Act, 21 U.S.C. § 801 et seq., the Controlled Substances Import and Export Act, 21 U.S.C. § 951 et seq., or the Marine Drug Law Enforcement Act, 46 U.S.C. App. 1901 et seq.; and those under 18 U.S.C. 924(c)(use of firearm in crime of violence or in drug trafficking crime), 18 U.S.C. § 956(a)(conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country), or 18 U.S.C. § 2332(b) (acts of terrorism transcending national boundaries); an offense listed in 18 U.S.C. § 2332(b)(5)(B)(federal crime of terrorism) for which a maximum term of imprisonment of 10 or more years is prescribed; an offense under Chapter 77 of 18 U.S.C. ("Peonage, Slavery, and Trafficking in Persons"), for which a maximum term of imprisonment of 20 years or more is prescribed; or an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252(A)(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 (kidnapping, sex trafficking sexual abuse, abusive sexual contact, sexual exploitation, selling or buying of children, certain child pornography offense, and transportation for illegal sexual offenses and related crimes). 18 U.S.C. § 3142(e)(3). The presumption is also triggered when the judicial officer finds that a defendant charged with a crime listed in § 3142(f) was previously convicted for a similar crime while on release pending trial and no more than 5 years has elapsed since the conviction or release from imprisonment for that prior offense. 18 U.S.C. § 3142(e)(2). For those purposes, qualifying offenses include crimes of violence under 18 U.S.C. § 3156(a)(4); a violation of 18 U.S.C. § 1591 ("Sex trafficking of children or by force, fraud or coercion"); offenses listed in 18 U.S.C. § 2332(B) (acts of terrorism transcending national boundaries) for which a maximum term of imprisonment is 10 years or more is prescribed; and an offense for which the maximum sentence is life imprisonment or death; an offense for which a maximum term of imprisonment of 10 years or more is prescribed under the Controlled Substances Act, 21 U.S.C. § 801 et seq., the Controlled Substances Import and Export Act, 21 U.S.C. § 951 et seq., or the Marine Drug Law Enforcement Act, 46 U.S.C. App. 1901 et seq.; any felony if the person has been convicted of 2 or more of the described offenses or 2 or more equivalent State or local offenses or a combination of such offenses; or any felony that is not otherwise a crime of violence that involves a minor victim, or possession or use of a firearm or destructive device, or any other dangerous weapon; and failure to register under 18 U.S.C. § 2250 in connection with the Sex Offender Registration and Notification Act. 18 U.S.C. § 3142(e)(2).

threaten, injure, or intimidate, or attempt to threaten, injure or intimidate a prospective witness or juror. 18 U.S.C. § 3142(f)(2)(B). The government seeks detention on that basis. In making a detention determination, the court must consider the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to any other person or the community that would be posed by the defendant's release. U.S.C. § 3142(g).

   A. RISK

First, during the detention hearing, the government proffered that in October 2015, at a point when the ongoing Grand Jury investigation giving rise to this case was known to Muñiz, he told a prospective government witness words to the effect that he knew who were the snitches talking to federal authorities about their business dealings, and that if anyone got him into trouble, he was going to make sure to kill everyone, from the dog to the last member of the snitch's family.

Second, the government presented the testimony of Juan Carlos López, a Special Agent of the FBI, who testified to have read the [FBI Form] 302 describing the statement Muñiz made, that he spoke with the case agent advising him that he wanted to talk to the person who received the threat, and that he spoke with that person, who confirmed the threat.

In that regard, the person informed Special Agent López that Muñiz told her that he was going to kill the snitch, the snitch's family members, and their dog; that Muñiz had a lot of connections in Moca; and that she feared for her life because Muñiz could send people to kill her. As to the person's demeanor, Special Agent López said that she started crying when he spoke with her. The statements attributed to Muñiz are serious enough to be considered threatening. See, United States v. Fontánez-Olivo, 937 F.Supp.2d 198, 200 (D.P.R. 2012)(denying bail to defendant who threatened cooperating witness).

Muñiz states that this information came in as hearsay, and is not reliable. He contends that the words attributed to him are no more than a figure of speech – a way of speaking – and that the agents did not take them seriously. He argues that there is no recording; that agents did not place the witness in the Federal Witness Protection Program; and that the information was not used to support an obstruction of justice charge against Muñiz.

Hearsay evidence is admissible in bail proceedings. United States v. Acevedo-Ramos, 755 F.2d 203, 207-208 (1st Cir. 1985). But it must be reliable. Id. Here that threshold is met, for the information was included in a 302, and Special Agent López confirmed it with the witness.[2] In that sense, it is not information about general, unspecified threats, or relayed by an unknown source the government has not interviewed for verification.

That Muñiz was not recorded is unavailing; confirmation suffices. In like manner, that a threat was not recorded does not mean it was not made even though the witness was not placed in protective custody. There is no acknowledgement by the case agent or anybody else within the FBI that the threat was fabricated, or deserving to be written off. For the same reason, the information need not be incorporated into an indictment for it to be considered trustworthy. See, Acevedo-Ramos, 755 F.2d at 205-206 (defendant charged with robbing over $600,000 in diamonds detained pending trial because of risk of obstruction of justice even though he had not been charged with obstruction of justice).

Counsel's characterization of Muñiz' words as a figure of speech does not alter the reliability calculus here. There is no evidence that Muñiz treated them as "a way of speaking." To this end, for example, he did not downplay the seriousness of what he had said as something not

---

[2] Muñiz argues that the FBI received the statement on October 15, 2015, and drafted the 302 on October 20, 2015. The sequence is unremarkable, for it is contemporaneous with the event to which it refers.

to be taken seriously or not to be concerned about. Given the context, the words must be taken at face value, and they suffice to show a threat against a government witness. See, United States v. Torres, 427 Fed.Supp.2d 46, 50 (D.P.R. 2006)(rejecting argument that threats were a product of defendant's outrage at having found that confidential informant was attempting to consummate a narcotics transaction in the cockfight arena that defendant managed).

   B.   DETENTION FACTORS

      1.  Nature and Circumstances of Offense

As previously stated, Muñiz is charged in Count 1 (Conspiracy to Commit Federal Programs Fraud and Wire Fraud), Count 18 (Conspiracy to Commit Money Laundering), and Count 23 (Destruction of Records). As to the conspiracy to commit Federal programs fraud and wire fraud, the Indictment, states that Muñiz conspired, combined, and agreed with codefendants Anaudi Hernández Pérez, Sally López Martínez, Sonia Barreto Colón, Ivonne Falcón Nieves and others known and unknown to the Grand Jury, to devise and intend to devise a scheme and artifice to defraud and deprive the United States and citizens of Puerto Rico of honest services from public officials Sally López, Sonia Barreto, and Ivonne Falcón; to corruptly give, offer, and agree to give anything of value to public officials Sally López, an agent of the Workforce Development Administration of Puerto Rico (Administración de Desarrollo Laboral or ADL by its Spanish acronym), and Sonia Barreto, and Ivonne Falcón; both agents of the Acueducts and Sewers Authority of Puerto Rico (Autoridad de Acueductos y Alcantarillados or AAA, by its Spanish acronym), said entities having received federal financial assistance in excess of $10,000 in a one-year period, with the intent of influencing and rewarding them, in connection with any business, transaction, and series of transactions of ADL and AAA, involving anything of value of at least $5,000, that is, recommendations for appointments and employment, dinners, gifts, entertainment

and other things of value by and from codefendant Anaudi Hernández, in exchange for obtaining favorable treatment and the awarding of government contracts to companies *de facto* controlled by Hernández and other official acts (Docket No. 3, Count 1 at ¶¶ 11-15).

According to the Indictment, Muñiz conspired to utilize JM Professional & Training Group Inc., a corporation over which codefendant Anaudi Hernández exercised *de facto* control, to secure government contracts (Id. at ¶¶ 2, 11(iv)), held meetings with codefendant Anaudi Hernández and unindicted coconspirators to examine possible government contract and proposal of opportunities, and to that effect, available proposals, agencies to find proposals, and companies that could be created to obtain government contracts. Id. at ¶ 24.

The purpose of the conspiracy of which Muñiz has been alleged to be a part of, was for the defendants to utilize the public officials positions within the government of Puerto Rico to benefit and enrich themselves through bribery. Id. at ¶ 16. In that regard, a conspirator like Muñiz need not commit or even agree to commit the predicate acts that are elements of a substantive count, to be found guilty of the conspiracy. It suffices that he adopted the goal of furthering or facilitating the criminal endeavor. Salinas v. United States, 522 U.S. 52, 65 (1997). For the same reason, the evaluation that the Bail Reform Act calls for is not limited to predicate acts ascribed to a particular defendant in the conspiracy, but encompasses "the objectives and means of the conspiracy as a whole, as alleged through the predicate acts ascribed to all enterprise participants." See, United States v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2005) (so stating).

In addition, the Indictment states that Muñiz conspired and combined with codefendant Anaudi Hernández and others to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, proceeds of violations of 18 U.S.C. § 666 (bribery involving a program receiving federal funds),

18 U.S.C. §§ 1343 and 1349 (wire fraud and conspiracy to commit wire fraud), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Docket No. 3, Count 18).

Finally, the Indictment points out that Muñiz aided and abetted codefendant Carlos F. Luna to corruptly attempt to obstruct, influence and impede and investigation being conducted by the Federal Bureau of Investigation to determine whether violations of 18 U.S.C. §§666, 1343, 1349, and 1956 had been committed, by replacing computers utilized by JM Professional & Training Group Inc., to conduct official business with the Workforce Development Administration of Puerto Rico (Administración de Desarrollo Laboral or ADL by its Spanish acronym), in order to keep authorities from having access to their contents (Docket No. 3, Count 23).  If convicted, Muñiz faces a maximum term of imprisonment of 5 years for Count 1, 20 years of imprisonment for Count 18, and 10 years of imprisonment for Count 23.  The offenses charged and statutory exposure underpinning them favor detention.[3]

 2. Weight of Evidence

The government proffered there are witnesses with first-hand knowledge of the offenses involving Muñiz, in addition to documentary evidence (financial reports from different banking institutions), a recording, a video, and electronic communications.  To that extent, the evidence

---

[3] According to the government, based on the advisory sentencing guidelines Muñiz faces close to 8 years of imprisonment for the offenses charged. Defense counsel stated that in another case with the same maximum penalties he received an offer for a 6-month term of imprisonment.  For present purposes, the court is entitled to rely on maximum statutory terms of imprisonment.  Moss, 887 F.2d at 336.

against Muñiz must be considered strong.  For purposes of bail determination, there is no evidence inconsistent with a finding of guilt.  See, United States v. Gray, 529 F.Supp.2d 177, 181 (D.Mass. 2007)(so noting in rejecting claim that weight of evidence was weak).  Compare that situation with the one evaluated in United States v. Torres-Rosario, 600 F.Supp.2d 327, 334 (D.P.R. 2009), where the only witness against the defendant failed to identify him in court during the bail hearing even though he was the only person in the courtroom dressed in an inmate jumpsuit and was sitting at the defense counsel table next to his attorneys.  This factor favors detention.

3. History and Characteristics of the Defendant

The Pretrial Services Report states that Muñiz is a 34-year-old, self-employed, doctoral student with no prior criminal record.  He has a common law wife and, a 10-month child.  These elements favor release.

4. The Danger Posed to the Community by Defendant's Release

The words attributed to Muñiz are threatening.  The legislative history of the Bail Reform Act repeatedly emphasizes that defendants who have threatened witnesses pose a significant danger to the community.  See, S. Rep. No. 225, 98th Cong., 1st Sess. At 7, 12, 15, 21, *reprinted* in 1984 U.S. Code Cong. & Adm. News at 10, 15, 18, 24, 25 (Supp. 9a).  From the firearm authorization resolution submitted in evidence, Muñiz had been the manager of a business (Docket No. 65, Exh. 2).  Based on the Pretrial Services Report, he is a self-employed farmer, with life-long residence in Moca.  These activities do not take place in a vacuum.  Combined, they confirm that, as the informant stated, Muñiz has connections in Moca.  Further, Muñiz had an authorization to possess and carry a firearm.  Id.  When he was arrested, he provided it to the arresting officer. But he had practiced in a shooting range with a weapon or weapons of different caliber(s).  And a

Puerto Rico Police Department Report shows that he had interacted with 3 different guns shops (Id., Exh. 3a).

Together with the threat and Muñiz' contacts with Moca, his familiarity with firearms of different calibers and interactions with shooting range and armories pose a serious risk the court cannot overlook, that he will obstruct or attempt to obstruct justice by threatening, injuring, or intimidating, or attempting to threaten, injure, or intimidate prospective witnesses. In connection with bail determination, the court is persuaded that Muñiz said what he meant, and means what he said.

### IV.    CONCLUSION

Having carefully considered all the evidence as well as the available range of release conditions, the court concludes that the government has shown, by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of the witness and the community if Muñiz is released. The threat, nature and circumstances of the offenses charged including potential penalties, the weight of the evidence, the danger posed to others, and Muñiz' experience with firearms and contacts outbalance other elements in his personal and history and characteristics arguably supporting release even under the conditions that the Magistrate Judge set at Docket No. 82. The totality of the evidence submitted in the *de novo* hearing require detention. Therefore, Muñiz shall be detained without bail pending trial.

**SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of December 2015.

S/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge